IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RAQUEL K. GRANT, | ) | 4:07CV3262 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

The plaintiff, Raquel K. Grant, claims in this Social Security appeal that the Commissioner's decision to deny her disability insurance benefits is contrary to law and not supported by substantial evidence.  The Commissioner's decision will be affirmed.

## I.  BACKGROUND

Grant applied for benefits under Title II of the Social Security Act on July 7, 2005, claiming that she became disabled on October 22, 2003, because of obsessive-compulsive disorder, bipolar disorder with manic depression, and spondylosis at L5-S1.  Grant was 22 years old on the date of the alleged onset of disability.  She has a high school diploma and has been employed in the past as a machine operator, a waitress, and a fast food worker.

The application for disability insurance benefits was denied on October 5, 2005, with the state agency finding that while Grant has received medical treatment for the conditions listed, and has some limitations, she should be able to do lighter types of work activities that do not require special skills, working with large groups of people, heavy lifting, or frequent bending.  The application was denied for the same reason on reconsideration, on November 29, 2005.

At Grant's request, an administrative hearing was held on May 16, 2007. Testimony was provided by Grant, by a clinical psychologist, Nancy Winfrey. Ph.D., and by a certified rehabilitation counselor, William J. Tysdale.  The medical expert and vocational expert were both under contract with the Commissioner.  Grant was represented by a non-attorney at the hearing.  The administrative law judge ("ALJ") issued an unfavorable decision on June 17, 2007, concluding that Grant has not been under a disability within the meaning of the Social Security Act.

### A.   The ALJ's Findings

In his decision, the ALJ evaluated Grant's disability claim according to the five-step sequential analysis prescribed by the Social Security Regulations.  *See* 20 C.F.R. § 404.1520.  Among other things, the ALJ found that:

1.     Grant has not engaged in any substantial gainful activity since the alleged disability onset date.  (Tr. 25.)

2.     Grant "has a history of L5 spondylosis with a grade II spondylolisthesis of the L5 on S1, with a subsequent decompressive laminectomy of L5-S1, plating internal fixation and posterolateral fusion, and back pain, an impairment which is considered to be 'severe' under the Social Security Regulations . . .."  (Tr. 25.)   There is also some evidence of major depressive order, generalized anxiety disorder, panic disorder, and obsessive compulsive disorder, but these impairments are 'not severe' under the Social Security Regulations. (Tr. 27-28.)  Migraine headaches, first alleged by Grant when requesting reconsideration, are also 'not severe' impairments.  (Tr. 28.) Grant's allegation of a bipolar disorder is not supported by objective clinical findings.  (Tr. 27.)

3.     Grant does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 28.)

4.     Grant "retains a residual functional capacity for a light exertional level as used in the Dictionary of Occupational Titles, who can stand and/or

walk, with normal breaks, for at least 6 hours total in an 8-hour workday, who should work where she can alternate between sitting and standing/walking every 30 to 45 minutes if need be, pushing and pulling as might be needed to operate hand or foot controls is at the same level as lift and carry stated above, could occasionally climb ramps and stairs but should not be required to climb ladders, ropes or scaffolds, who can at least occasionally balance, stoop, kneel, crouch and crawl, who is limited to only frequently reach overhead or above should height with either upper extremity, who should not be subjected to concentrated exposure to extreme cold or vibration, and no exposure to hazards of the workplace." (Tr. 28-29.) Grant is unable to perform any past relevant work. (Tr. 36.)

5. Considering Grant's age, education, work experience, and residual functional capacity ("RFC"), there are other jobs that exist in significant numbers in the national and regional economy that she can perform, including survey worker, office helper, and telephone information clerk. (Tr. 36-37.) Consequently, she is not disabled.

Grant's request for further review by the Appeals Council was denied on September 21, 2007. The present action was timely filed on November 21, 2007.

## II. DISCUSSION

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id.*, at 960-61; *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

This court must also review the decision of the Commissioner to decide whether the proper legal standard was applied in reaching the result. *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992). Issues of law are reviewed de novo. *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n.2 (8th Cir. 1995); *Smith*, 982 F.2d at 311.

Grant first contends that the ALJ erred at step two by finding that her mental impairments are not severe. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* However, "[e]ven an impairment that is not severe by itself must generally be considered in combination with the claimant's other impairments, and "[i]f a medically severe combination of impairments is found" at step two, "it will be considered throughout the disability evaluation process." *Reter v. Railroad Retirement Bd.*, 465 F.3d 896, 898 (8th Cir. 2006) (quoting 20 C.F.R. § 220.104)).[1] "The ALJ must consider the impairments in combination and not fragmentize them in evaluating their effects." *Delrosa v. Sullivan*, 922 F.2d 480, 484 (8th Cir. 1991).

There is substantial evidence to support the ALJ's findings that Grant's major depressive disorder, generalized anxiety disorder, panic disorder, and obsessive-compulsive disorder are not severe impairments.[2] The ALJ's decision adequately

---

[1] A comparable provision is found in the Social Security Regulations. *See* 20 C.F.R. § 404.1523 ("If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.").

[2] The ALJ's finding that Grant's alleges bipolar disorder is non-existent is also supported by substantial evidence. Grant does not challenge this finding.

documents the reasons for these findings, and Grant does not identify any evidence that the ALJ failed to consider in this regard.  Rather, the thrust of Grant's argument is that the ALJ failed to consider her mental state in combination with her back pain. More particularly, she argues that there is a direct relationship between the two, and that her depression and anxiety would increase with the stress of working.  In other words, the real issue on appeal is whether the ALJ erred at step four by not including any mental limitations in Grant's residual functional capacity.[3]

"RFC is what an individual can still do despite his or her limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. . ..  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Social Security Ruling 96-8p, 1996 WL 374184, *2 (S.S.A. July 2, 1996).

"In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.  For example, in combination with limitations imposed by an individual's

---

[3] The RFC is used at both step four and five of the evaluation process, but it is determined at step four, where the burden of proof rests with the claimant. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).  "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations." *Id.*

other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do." *Id.*, at *5.

Grant primarily relies upon the opinions of a family practitioner, David Isom, M.D., and a mental health counselor, Christine Karell, APRN. In completing a physical RFC questionnaire on January 7, 2006, Dr. Isom answered "Yes" when asked whether "emotional factors contribute to [Grant's] symptoms and limitations," and he identified depression and anxiety as "psychological conditions affecting [her] physical condition." (Tr. 405.) He also indicated by a check-mark response that Grant has a "marked limitation" in her "ability to deal with work stress." (Tr. 406.) Dr. Isom provided similar responses to another physical RFC questionnaire on May 14, 2007, and opined that "the cumulative effect of all [of Grant's] medical problems, psychological problems and symptoms" would allow her to work only 2 hours per day, that she would be absent from work more than 3 times a month, and that her experience of pain and other symptoms would "constant[ly]" interfere with attention and concentration. (Tr. 449.) On September 5, 2006, Nurse Karell stated in a mental RFC questionnaire that "[i]ncreased pain [related] to [Grant's] chronic back problems increases her mood [and?] anxiety [symptoms]." (Tr. 434.) She also opined that Grant has a "marked limitation" in the "ability to deal with work stress," and that Grant's symptoms would "frequently" interfere with "the ability to get along with and function with others cooperatively in a work setting," the "ability to handle work demands, persistence, and expectations," and the "ability to focus, organize, [and] complete work tasks timely." (Tr. 434.)

The ALJ gave "little weight" to the opinions of Dr. Isom because he found them to be inconsistent with Grant's own testimony and her reported activities. He also criticized the doctor's opinions because they were "apparently based upon a combination of mental and physical impairments, some of which the doctor is not qualified to address," and because Grant visited Dr. Isom on the dates indicated "not in an attempt to seek treatment for symptoms, but rather in connection with an effort

6

to generate evidence . . .." (Tr. 35.)  The ALJ noted that any treatment Dr. Isom provided to Grant "has been relatively infrequent with significant gaps.  Treatment has been essentially routine and/or conservative in nature, and in fact it appears Dr. Isom has provided obstetrical service rather than treatment for any disability related complaint."  (Tr. 35.)

The ALJ did not mention the RFC assessment that Grant's mental health counselor provided, but he did find that Nurse Karell had misdiagnosed Grant with a "bipolar affective disorder type II."  Grant does not challenge this finding, which was made in accordance with Social Security Ruling 06-03p.[4]  Since Nurse Karell's RFC assessment was made with reference to a non-existent mental impairment, the assessment is entitled to no weight and was properly disregarded by the ALJ.

---

[4]  This policy interpretation ruling states, in part:

Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources."  These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity. These factors include:
- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

SSR 06-03p, 2006 WL 2329939 , *4-5 (S.S.A. Aug. 9, 2006) (subheadings omitted).

The record contains another mental RFC assessment that was prepared by a state-agency consulting psychologist on October 5, 2005, which indicates that Grant is "moderately limited" in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, in the ability to interact appropriately with the general public, in the ability to accept instructions and respond appropriately to criticism from supervisors, and in the ability to get along with coworkers or peers without distracting the or exhibiting behavioral extremes. (Tr. 220.) This psychologist also completed a psychiatric review technique form which shows that Grant has "moderate" difficulties in maintaining social functioning, but no restrictions of activities of daily living, no difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (Tr. 233.) Both of these documents are referenced in the ALJ's decision, but their findings are neither accepted nor expressly rejected by the ALJ.

The ALJ stated that he was giving "substantial weight" to the opinions of Dr. Winfrey, whose testimony at the hearing followed the psychiatric review technique format. (Tr. 27.) Dr. Winfrey opined that Grant has "mild" restrictions in activities of daily living, in social functioning, and in concentration, persistence or pace. (Tr. 495-96.) Significantly, however, Dr. Winfrey responded "None" when she was asked by the ALJ, "Strictly from the mental health standpoint what, if any, limitations would there be in the work world, work task, work place, work setting, things like that?" (Tr. 496.)

The hypothetical question that the ALJ posed to the vocational expert did not include any mental limitations. "To constitute substantial evidence, a hypothetical must set forth the impairments accepted as true by the ALJ." *Brachtel v. Apfel*,132 F.3d 417, 421 (8th Cir. 1997). Thus, for example, "when an ALJ states that a claimant has impairments of concentration, persistence, or pace, the hypothetical must include those impairments." *Id.* (citing *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996)). In the present case, the ALJ evidently concluded from Dr. Winfrey's

testimony that Grant "would not have any work limitations due to [her mental] impairments." (Tr. 27.)  The ALJ found it significant that Grant "reported that she was not taking any medications for her impairments[,]" even though medical records indicated that in the past her symptoms had improved with medication.  (Tr. 27.) "Impairments that are controllable or amenable to treatment do not support a finding of disability, and failure to follow a prescribed course of treatment without good reason can be a ground for denying an application for benefits." *Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir. 1998).  The ALJ also found, for good reason, that Grant's subjective complaints of pain, and pain-related depression and anxiety,  were greatly exaggerated.  I conclude that the RFC assessment made by the ALJ, which did not include any limitations related to Grant's "not severe" depression and anxiety, is supported by substantial evidence in the record as a whole.

Grant makes numerous other arguments in her 22-page opening brief and 45-page reply brief,[5] but essentially claims that there are "[f]our vocationally preclusive effects of her impairments" entitling her to an award of benefits. (Plaintiff's reply brief (filing 20), at CM/ECF p. 1.)   First, Grant argues that she is incapable of any work because she must lie down during the day.  As the ALJ correctly found, however, there is no medical evidence to support this contention. "[W]hether there is a 'need' to lie down is a medical question that requires medical evidence." *Harris v. Barnhart,* 356 F.3d 926, 930 (8th Cir. 2004).  Second, Grant argues that her symptoms or medications frequently impair her attention and concentration.  In support of this argument, Grant relies primarily upon the opinions of Dr. Isom and Nurse Karell, which, as discussed above, the ALJ properly discounted or disregarded.  As the ALJ also found, Grant has opted not to take prescription medicines to control her pain, depression, and anxiety.  Third, Grant argues that her medical condition would cause her to be absent from work more than

---

[5] While our local rules do not prescribe any page limitations for briefs, there is generally no reason why a reply brief should be twice as long as an opening brief. "The reply brief may not merely repeat the moving party's initial arguments, but must address factual or legal issues raised in the opposing brief."  NECivR 7.1(c).

3 days per month.  Again, this argument is based upon the discredited opinions of Dr. Isom and Nurse Karell.  Fourth, Grant argues that two treating physicians, Dr. Isom and Reg Hagge, M.D., limited her to half-time work.  There is no merit to this argument.  Dr. Isom never directed Grant not to work full-time; rather, this is simply another part of his RFC assessment, where he opines that Grant can only sit for 2 hours and stand or walk for 2 hours during a normal workday.  (Tr. 406.)  On April 19, 2004, following Grant's back surgery, Dr. Hagge released her to return to work as a machine operator on a half-time basis.  (Tr. 311)  Because the ALJ determined that Grant's RFC does not permit her to return to the machine operator job, the temporary restriction that was imposed by Dr. Hagge when she attempted to return to that job is immaterial.

Grant generally complains that the ALJ erred in finding that her daily activities were inconsistent with the level of symptoms she reported.   The record indicates, however, that Grant was active as a homemaker and mother of two young children during the period in question. (Tr. 30, 324.)  Her husband was away from the home for extended periods due to his job.  (Tr. 31, 468.)  Grant drove 15 to 20 times a week. (Tr. 31, 473.)  Her day included getting her son ready for school, caring for her infant, taking her son to school, cooking, cleaning, doing laundry, doing the shopping, and caring for the family pets.  (Tr. 30, 475-76.)  She attended school functions for her son and performed some yard work such as raking and gardening. (Tr. 30, 479.)  She took her son to the pool and went to the gym every other day prior to the recent birth of her second child.  (Tr. 30, 480.)  At various points in the record she reported going watersliding with her children, hunting with her husband, and going on several other trips out of town with her husband.  (Tr. 30-31, 373, 402, 404.)  In August 2004, she went to Idaho on a two-week camping trip.  (Tr. 30-31, 324.)  She testified that she drove to Wyoming on another trip.  (Tr. 31, 473.)  Despite her reported inability to sit for extended periods, Grant was able to fly to Germany and back to see her sister.  (Tr. 30, 431, 473.)  Activities that are inconsistent with a claimant's assertion of disability reflect negatively upon the claimant's credibility. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).

The ALJ properly took note of the fact that, despite Grant's allegations of disabling physical pain, the record reveals that for large portions of the relevant period she took no strong pain medication on a regular basis. (Tr. 32-33, 202.) Grant primarily used over-the-counter pain medications such as Tylenol or Ibuprofen, and at times used no medication at all. (Tr. 32-33, 202, 324, 333, 374, 382, 397.) This strongly suggests that her pain symptoms are not as severe as she alleges. *See Baker v. Barnhart, 457 F.3d 882, 893 (8th Cir. 2006)* ("Baker's decision not to take pain medication was a valid factor for the ALJ to consider.").

The record also reveals extended periods when, despite her allegedly disabling psychological impairments, Grant took no psychotropic medication. (Tr. 33, 324, 378, 382, 413, 415, 423, 427, 429, 431, 441, 470.) However, when Grant did take psychotropic medications, her symptoms were significantly better. (Tr. 27.) In December 2004, Grant reported that Lexapro was "quite effective" in controlling her depressive symptoms, but that she had stopped taking it two months earlier. (Tr. 382.) In February 2005, she indicated that Paxil helped her symptoms, but reported some side effects. (Tr. 339). Dr. Isom noted that Grant had fewer angry outbursts and that her anger episodes were "dramatically improved" when she used medication. (Tr. 377). In May 2005, Plaintiff told Nurse Karell that Paxil afforded "considerable relief" of her irritability, improved her depressive symptoms, and was effective ind reducing her obsessive compulsive feelings. (Tr. 373.) In July 2005, Grant's mood was "significantly better" when using Paxil and Wellbutrin. (Tr. 374.) She reported decreased stress and irritability when she restarted psychotropic medication in May 2006. (Tr. 420-21.) The record also shows that when Grant took her psychotropic medication, her global assessment of functioning ("GAF") scores range from 65 to 75, indicating only mild to transient symptoms. (Tr. 372, 415, 418, 420, 422.) When she was not on medication for an extended period, Grant's GAF scores ranged from 50 to 60, indicating moderate to severe symptoms. (Tr. 341, 414, 424, 428.) Impairments that are controllable or amenable to treatment do not support a finding of disability. *See Kelley, 133 F.3d at 589; Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997).*

11

The Eighth Circuit has repeatedly stated that, where adequately explained and supported, credibility findings are for the ALJ to make.  *See Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Tang v. Apfel*, 205 F.3d 1084, 1087 (8th Cir.2000)). I find that the ALJ properly determined that Grant's subjective complaints were not credible, and that the ALJ's assessment of Grant's RFC is supported by substantial evidence in the record as a whole.

Grant argues that she did not retain the RFC to perform a full range of light work, but the ALJ made no such finding.  Grant also complains that the vocational expert ("VE") wrongly identified her waitress job as "semi-skilled" employment, but any mistake in this regard did not affect the outcome of the case—the VE identified only unskilled jobs in response to the ALJ's hypothetical question regarding alternative employment.  There is also no merit to Grant's arguments that she did not retain the RFC to perform sedentary work and that the ALJ's description of a sit/stand option does not conform to the Social Security Regulations.

### III.  CONCLUSION

In summary, the record establishes that Grant is not disabled because she can perform certain unskilled light and sedentary jobs that exist in significant numbers in the national and regional economy.  I have carefully considered each argument presented in Grant's briefs, even though not every argument has been mentioned above or discussed in detail.  To the extent that there are omissions, I basically concur with the positions stated in the Commissioner's well-written brief.

IT IS ORDERED that judgment shall be entered by separate document generally providing that the final decision of the Commissioner is affirmed.

August 4, 2008.                                    BY THE COURT:
                                                   s/ *Richard G. Kopf*

                                                   United States District Judge